Dorrell R. COULTHURST,
Plaintiff–Appellant,

v.

UNITED STATES of America,
Defendant–Appellee.

Docket No. 98–2860

United States Court of Appeals,
Second Circuit.

Submitted: June 11, 1999

Decided: May 31, 2000

Peter H. Schuck, New York, N.Y. (James J. Park, Law Student Intern, New Haven, CT, on the brief), for Plaintiff.

David X. Sullivan, Assistant United States Attorney, New Haven, CT (Stephen C. Robinson, United States Attorney, District of Connecticut, and Jonathan B. Pitt, Law Student Intern, on the brief), for Defendant.

Before: LEVAL and SOTOMAYOR, Circuit Judges, and POLLACK, District Judge.*

LEVAL, Judge:

Plaintiff Dorrell R. Coulthurst is a federal prisoner who was incarcerated at the Federal Corrections Institute in Danbury, Connecticut ("FCI–Danbury") during the events that are the subject of this action.

* Milton Pollack, Senior United States District Judge for the Southern District of New York,

On October 9, 1992, Coulthurst suffered injuries to his shoulders, neck, and back while lifting weights in the prison gymnasium, when a cable snapped on a lateral pulldown machine. Coulthurst brought suit against the United States under the Federal Tort Claims Act seeking to recover damages for his injuries caused by the government's negligence in maintenance of the weight room. The United States District Court for the District of Connecticut (Dominic J. Squatrito, *Judge*) granted the government's motion to dismiss his complaint for lack of subject matter jurisdiction, on the ground that, pursuant to the discretionary function exception ("DFE") to the FTCA, the United States is immune from suit for the type of conduct alleged in the complaint. Plaintiff appeals, arguing that the complaint can fairly be read to allege conduct which falls outside the scope of the DFE. We agree with the plaintiff that the complaint encompasses conduct which, if proven, falls outside the scope of the DFE and that dismissal based on the allegations of the complaint was, therefore, inappropriate. We accordingly vacate the district court's dismissal and remand the matter to the district court for further proceedings.

## BACKGROUND

In October 1992, plaintiff was a federal prisoner, serving a felony sentence at FCI–Danbury. According to the allegations of his complaint, at approximately 7 PM on October 9, he was lifting weights in the prison exercise room, performing "pull downs" on a lateral pulldown machine. The cable connecting the steel pull-down bar to the weights snapped, bringing the bar down onto his shoulders and neck with approximately 270 pounds of force. As a result of the incident, he suffered a torn rotator cuff in his left shoulder and various injuries to his back and neck.

sitting by designation.

Guidelines promulgated by the Bureau of Prisons require prison officials to "[v]isit the inmate wellness area (if there is one) and determine if the equipment is arranged in a safe manner and if participants use the equipment properly." U.S. Dep't of Justice, Federal Bureau of Prisons, *Operations Memorandum: Program Review Guidelines for Education/Recreation Services* (July 31, 1992), Guideline 4.3.2, at 22. The pertinent Guidelines contain no instructions as to the method to be followed in inspecting the machine that caused the injury or the frequency of inspections. The evidence placed before the court on the government's motion to dismiss included no information whether the person assigned to conduct the inspection received any instructions as to what procedures should be followed in conducting the inspection or as to frequency of inspection. Records introduced by the defendant included an inspection log bearing initials purporting to indicate that an inspection of the exercise room had been conducted two days prior to Coulthurst's injury.

The complaint seeks damages, alleging that Coulthurst's injuries were caused by the defendant's "negligence and carelessness" in that the defendant "failed to diligently and periodically inspect the weight equipment, and the cable" (Compl.¶¶ 6(a)-(b)) and "failed to replace the cable after undue wear and tear" (*Id.* ¶ 6(c)). Plaintiff's right to recover was premised on the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 *et seq.* The defendant moved to dismiss for lack of subject matter jurisdiction on the ground that the DFE barred recovery for the alleged conduct, even if government negligence could be established. The district court granted the defendant's motion and dismissed the case by Memorandum Opinion and Order dated July 31, 1998.

Plaintiff appealed the dismissal to this court. The matter was submitted to this panel on June 11, 1999. By order dated July 22, 1999, we appointed counsel to represent the plaintiff and ordered additional briefing.

## DISCUSSION

 Under traditional principles of sovereign immunity, the United States is immune from suit except to the extent the government has waived its immunity. In 1946, Congress adopted the FTCA which, subject to numerous exceptions, waives the sovereign immunity of the federal government for claims based on the negligence of its employees. *See* 28 U.S.C. §§ 1346(b), 2671 *et seq.* In relevant part, the FTCA, 28 U.S.C. § 1346(b)(1), authorizes suits against the government to recover damages

for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

A significant limitation on the waiver of immunity provided by the Act is the exception known as the DFE, 28 U.S.C. § 2680(a), which provides that Congress's authorization to sue the United States for damages

shall not apply to ... [a]ny claim ... based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of ... an employee of the Government, whether or not the discretion involved be abused.

Over the last two decades, the Supreme Court has handed down a series of decisions clarifying the scope of the DFE. The Court's decisions in *Berkovitz v. United States*, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988), and *United States v. Gaubert*, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991), establish the framework for evaluating whether particular governmental conduct falls under the

DFE. According to the *Berkovitz-Gaubert* test, the DFE bars suit only if two conditions are met: (1) the acts alleged to be negligent must be discretionary, in that they involve an "element of judgment or choice" and are not compelled by statute or regulation and (2) the judgment or choice in question must be grounded in "considerations of public policy" or susceptible to policy analysis. *See Gaubert*, 499 U.S. at 322–23, 111 S.Ct. 1267; *Berkovitz*, 486 U.S. at 536–37, 108 S.Ct. 1954.

■ In this case, the district court read the complaint to allege a deficiency in the scheduling and procedures for the inspection of the gym equipment. According to the district court's analysis, the acts alleged as negligent involved decisions establishing the procedures and frequency of inspection-decisions themselves involving elements of judgment or choice and a balancing of policy considerations (including inmate safety, providing sufficient recreational opportunities to inmates, and efficient resource allocation). The court therefore concluded that the government is shielded from liability for any negligence arising out of these decisions. As noted above, the relevant regulations do not mandate any particular course of inspection or the frequency of such inspections, and, thus, the officials at each prison are charged with making decisions about maintenance procedures and frequencies of inspection, balancing the relevant policy considerations in the process. *Cf. Gaubert*, 499 U.S. at 325, 111 S.Ct. 1267 (noting that "[d]ay-to-day management ... regularly requires judgment as to which of a range of permissible courses is the wisest" and holding that such decisions fall within the DFE); *Fazi v. United States*, 935 F.2d 535, 538 (2d Cir.1991) (same). The court thus concluded that both prongs of the *Gaubert* test were met as to these claims, and the court therefore lacked jurisdiction.

However, the complaint is susceptible to various readings. There are numerous potential ways in which an inspector's "carelessness" may have triggered the accident.

The operative words of the complaint-"negligence and carelessness" in the "fail[ure] to diligently and periodically inspect the weight equipment and cable"-encompass the possibility of various different types of careless and negligent conduct. On the one hand, the person charged with designing inspection procedures might have designed procedures that were deficient in that an inspector following those procedures would be likely to overlook, or fail to appreciate, a latent danger resulting from a frayed or strained cable. Similarly, the person deciding how frequently the inspection should be conducted might be negligent in that reasonable precaution might require more frequent inspections than provided in the schedule. We assume that if the negligence or carelessness involved in the case were of those sorts, the United States would be shielded from suit by the DFE. These types of negligently made decisions would involve elements of judgment or choice, would not be compelled by statute or regulation, and would be grounded in considerations of public policy since they would involve choices motivated by considerations of economy, efficiency, and safety.

On the other hand, the complaint's allegations of negligence and carelessness in the failure to diligently and periodically inspect might also refer to a very different type of negligence. For example, the official assigned to inspect the machine may in laziness or haste have failed to do the inspection he claimed (by his initials in the log) to have performed; the official may have been distracted or inattentive, and thus failed to notice the frayed cable; or he may have seen the frayed cable but been too lazy to make the repairs or deal with the paperwork involved in reporting the damage. Such negligent acts neither involve an element of judgment or choice within the meaning of *Gaubert* nor are grounded in considerations of governmental policy.

■ All of the foregoing possibilities are fairly alleged by the complaint's allega-

tions that the responsible officers "failed to *diligently* and periodically inspect the weight equipment" and "failed to replace the cable after undue wear and tear." The complaint was broad enough to cover both the types of negligence that are covered by the DFE and thus cannot be the basis of suit, and the types of negligence that fall outside the DFE. We therefore think the district court erred in assuming that the negligence alleged in the complaint involved only discretionary functions. For the reasons further developed below, we believe that if the inspector failed to perform a diligent inspection out of laziness or was carelessly inattentive, the DFE does not shield the United States from liability.

We acknowledge that the text of the DFE is somewhat ambiguous, and conceivably could be interpreted to bar damage suits based on any actions or decisions that are not directly controlled by statute or regulation. In particular, it is unclear what weight to give to the concluding phrase of the DFE, which asserts that the exception is applicable "whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). Reading the words out of context, one might characterize an official's lazy or careless failure to perform his or her discretionary duties with due care as an "abuse of discretion." Reading the statute in this fashion, however, would lead to absurd results. For example, the driver of a mail truck undoubtedly exercises discretion in the manner of driving and makes innumerable judgment calls in the course of making his or her deliveries. In some manner of speaking, therefore, one might characterize it as an "abuse of discretion" for that driver to fail to step on the brake when a pedestrian steps in front of the car, to fail to signal before turning, or to drive 80 mile per hours in a 35 mile per hour zone. Such a characterization, however, would effectively shield almost all government negligence from suit, because almost every act involves some modicum of discretion regarding the manner in which one carries it out. Such a result is not required by the language of the DFE and

would undercut the policy aims at the heart of the FTCA. We therefore would be reluctant to adopt that reading of the statute if that question had never before been considered.

In our view, furthermore, such a reading of the statute is foreclosed by a half-century of caselaw interpreting the DFE. As *Gaubert* and *Berkovitz* make clear, the prevailing test for the application of the DFE is two-pronged. It is not enough to establish that an activity is not mandated by statute and involves some element of judgment or choice; to obtain dismissal of the suit, the United States must also establish that the decision in question was grounded in considerations of public policy. *See Gaubert,* 499 U.S. at 322–23, 111 S.Ct. 1267; *Berkovitz,* 486 U.S. at 536–37, 108 S.Ct. 1954.

As the Court noted in *Gaubert,* "There are obviously discretionary acts performed by a Government agent that are within the scope of his employment but not within the discretionary function exception because these acts cannot be said to be based on the purposes that the regulatory regime seeks to accomplish." 499 U.S. at 325 n. 7, 111 S.Ct. 1267. The *Gaubert* court explicitly offered the example of a government official negligently driving a car while on official business as a discretionary act that clearly falls outside the DFE because the negligence in question cannot be said to be based on policy considerations. *See id.; see also Dalehite v. United States,* 346 U.S. 15, 29 n. 21, 73 S.Ct. 956, 97 L.Ed. 1427 (1953) (similarly utilizing "an automobile collision caused by the negligence of an employee of . . . [a governmental] agency" as the prototypical situation in which liability attaches). Supreme Court and Second Circuit caselaw provide other examples. *See, e.g., Indian Towing Co. v. United States,* 350 U.S. 61, 68–69, 76 S.Ct. 122, 100 L.Ed. 48 (1955) (careless maintenance of a lighthouse triggers liability); *Andrulonis v. United States,* 952 F.2d 652, 655 (2d Cir.1991) (careless failure of gov-

ernment scientist to maintain proper safety procedures and warn others of potential dangers); *Caraballo v. United States,* 830 F.2d 19, 22 (2d Cir.1987) (negligent patrol of a beach).

Under various fair readings of the complaint, this case similarly involves negligence unrelated to any plausible policy objectives. An inspector's decision (motivated simply by laziness) to take a smoke break rather than inspect the machines, or an absent-minded or lazy failure to notify the appropriate authorities upon noticing the damaged cable, are examples of negligence fairly encompassed by the allegations of the complaint that do not involve "considerations of public policy." *Gaubert,* 499 U.S. at 323, 111 S.Ct. 1267. Such actions do not reflect the kind of considered judgment "grounded in social, economic, and political policy" which the DFE is intended to shield from "judicial 'second-guessing.'" *United States v. Varig Airlines.* 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). If the plaintiff can establish that negligence of this sort occurred, his claims are not barred by the DFE, and he is entitled to recover under the FTCA.

The district court dismissed Coulthurst's suit based on its interpretation of the complaint. For the reasons outlined above, we believe that the complaint fairly alleges negligence outside the scope of the DFE and that dismissal on the basis of the allegations of the complaint was inappropriate. We accordingly vacate the district court's dismissal and remand the case for further proceedings.

■ This does not necessarily mean that plaintiff is entitled to trial on the basis of an ambiguous complaint. The government may compel plaintiff, by interrogatories or otherwise, to declare what is the negligent conduct he alleges occurred and to reveal whatever evidence he relies on to show such negligence. If the plaintiff is unable to offer sufficient evidence to establish a triable issue of fact on any theory of negligence outside the scope of the DFE, then the United States will be entitled to judgment. Such a dismissal, however, cannot be justified given the ambiguous allegations of Coulthurst's complaint.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED for further proceedings.