**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-3412
_____

TERRY MIDDLETON,
                              Appellant

v.

UNITED STATES OF AMERICA, Federal Bureau of Prisons
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil Action No. 1:13-cv-01085)
District Judge:  Honorable Yvette Kane
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 8, 2016

Before:  FISHER, SHWARTZ and COWEN, <u>Circuit</u> <u>Judges</u>

(Opinion filed:  August 15, 2016)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Pro se appellant Terry Middleton ("Middleton") appeals from a final order of the United States District Court for the Middle District of Pennsylvania. We will affirm the District Court's determination that it lacked jurisdiction to hear Middleton's negligent supervision claims and vacate its determination that it lacked jurisdiction to hear Middleton's failure to protect claim.

I.

Middleton is a prisoner at the Federal Correctional Institution in Allenwood, Pennsylvania ("FCI-Allenwood"). Middleton was assigned as a clerk to the food service work detail, and his responsibilities included either directly placing inmates into positions within the food service department or assisting food service staff in doing so. On January 6, 2012, during dinner-time, another inmate, Eugene Smith ("Smith"), attacked Middleton because he believed that Middleton had removed him from the food service department roster. Officer Walter, the guard on duty, was in his office. Smith entered Middleton's housing unit without authorization, brought Middleton to the ground, and assaulted Middleton with a soda can for over ten minutes. Staff broke up the assault once Middleton slid out of the housing unit, and he sustained cranial and facial injuries as a result of this assault. Officer Walter only came out after other staff intervened.

Middleton filed his complaint in the Middle District in April 2013, pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., alleging that FCI-Allenwood officials were negligent: (1) by mistakenly placing Smith in the food service department; (2) in ordering Middleton to conduct supervisory activities over other inmates; and (3) by Officer Walter's failure to monitor inmate traffic in and out of the

housing unit before the attack. Middleton alleged that these three actions led to Smith's assault. Middleton also alleged that Smith believed that Middleton was responsible for removing him from the food roster because FCI-Allenwood staff did, in fact, order Middleton to carry out supervisory duties over other inmates, in violation of the prison's written policies. Middleton additionally argued that Smith was able to enter the housing unit and assault him because Officer Walters secluded himself in an office after unlocking the unit doors to allow the inmates to go to dinner. The Government filed a motion to dismiss ("MTD") or, in the alternative, a motion for summary judgment.[1] The District Court granted the MTD on the basis of subject matter jurisdiction, holding that the discretionary function exception applied to Middleton's claims. Middleton timely appealed.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. This Court exercises plenary review when a district court dismisses a complaint for lack of subject matter jurisdiction, see Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006), and when a district court applies the FTCA's discretionary function exception, see Merando v. United States, 517 F.3d 160, 163-64 (3d Cir. 2008). We "review the District Court's findings of fact related to jurisdiction for clear error." S.R.P., 676 F.3d at 332.

---

[1] The Government challenged the "fact of jurisdiction." Brief in Support of Motion to Dismiss at 12. Accordingly, the District Court "was entitled to independently evaluate the evidence to resolve disputes over jurisdictional facts." S.R.P. v. United States, 676 F.3d 329, 332 (3d Cir. 2012).

Under the FTCA, the United States has consented to be sued for torts committed by persons acting on its behalf. See 28 U.S.C. § 2671, et seq.; Merando, 517 F.3d at 164. The discretionary function exception states that the federal government cannot be sued for claims that are based on "'the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.'" Merando, 517 F.3d at 164 (quoting 28 U.S.C. § 2680(a)). This Court must undertake a two-part inquiry to determine if the discretionary function exception applies in a particular case. See United States v. Gaubert, 499 U.S. 315, 322-23 (1991); see also Merando, 517 F.3d at 164. First, this Court must consider whether the act that gave rise to the injury alleged involves "an element of judgment or choice." Gaubert, 499 U.S. at 322. If a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, then the first part is not satisfied, because the federal employee has no other option but to follow that course of action. Id.

Second, this Court must determine "'whether that judgment is of the kind that the discretionary function exception was designed to shield.'" Gaubert, 499 U.S. at 322-23. To avoid judicial second-guessing, government actions and decisions that are based on considerations of public policy will be shielded, and the focus of this inquiry is not on the federal employee's subjective intent, but rather, "on the nature of the actions taken and on whether they are susceptible to policy analysis." S.R.P., 676 F.3d at 333 (quoting Gaubert, 499 U.S. at 325). While Middleton bore the burden of establishing that his

4

claims fell within the scope of the FTCA, the Government had the burden of showing that the discretionary function exception applied. Id. at 333.

Before considering application of the discretionary function exception, we must determine the conduct at issue. Cf. Merando, 517 F.3d at 165. Middleton and the Government did not dispute all of the conduct at issue. They agreed that Middleton was assigned to his specific job, that he was assaulted by Smith, that Officer Walter was in his office, and that Smith was mistakenly assigned. See Brief in support of MTD, dkt. # 52 at pgs. 5 – 7; Brief in Opp. to Defendants' MTD, dkt. # 55 at pgs. 3 – 4. However, Middleton and the Government disagree regarding the scope of Middleton's authority over other inmates, and over whether Officer Walter was negligent in his duty. See Brief in support of MTD, dkt. # 52 at pgs. 4 – 5; Brief in Opp. to Defendants' MTD, dkt. # 55 at pgs. 3 – 4.

### A. Middleton's Negligent Supervision Claims

The District Court correctly concluded that it lacked jurisdiction over Middleton's claims that FCI-Allenwood staff was negligent in assigning Smith to the bakery and him to a supervisory post.[2] The act of assigning an inmate to a prison job involves an element of judgment or choice. As the District Court noted, the Bureau of Prison's ("BOP") policy on work assignments states that such assignments should be made "with consideration of the institution's security and operational needs, and should be consistent with the safekeeping of the inmate and protection of the public." Dist. Ct. Op. at 6.

---

[2] We assume without deciding that his claim that he was given supervisory authority over other inmates is true.

Turning to Gaubert's second step, as the District Court did, the assignment of work is intended to promote inmate rehabilitation and the facility's security needs. Accordingly the assignments given to the inmates by FCI-Allenwood staff were covered by the discretionary function exception.

More specifically, even if Smith was not meant to be assigned to the bakery, the BOP exercises discretion in assigning inmates to work details, and the District Court correctly noted that such decisions are essentially grounded in "policy related analysis." See Santana-Rosa v. United States, 335 F.3d 39, 43-44 (1st Cir. 2003). The decision about what duties were appropriate for Middleton was based on the same "policy related analysis." Middleton cited three program statements as support for his claim that his job assignment, in which he was given supervisory authority over inmates, contravened policies that constrained discretion in making work assignments. However, none of these statements speaks to the discretion of prison staff deciding when to assign inmates to work and which inmates to assign. One program statement directs prison staff to include language reiterating that inmates do not have authority over other inmates in post orders, another directs work assignment supervisors on how to perform their duties, and another generally directs prison staff not to give orders that could endanger the health and safety of inmates. See Dkt. # 52-2 at pgs. 22, 26-28, 31. Accordingly, the discretionary function exception applied to both negligent supervision claims, and we will affirm the District Court's dismissal of them.

B. Middleton's Failure to Protect Claim

We will vacate the District Court's dismissal of Middleton's failure to protect claim. The District Court stated that the only legal standard that Officer Walters was held to "is the general duty imposed on all [BOP] staff to provide for the safekeeping and protection of prisoners[,]" citing to 18 U.S.C. § 4042(a). Middleton contended that the Post Orders at FCI-Allenwood were not advisory, and the Government argued that the Post Orders were, in fact, advisory, because they contained language stating that they provided general guidance and instruction. The District Court found that they were discretionary, and so moved on to the second part of the analysis.

However, the District Court erred at the first step of the Gaubert analysis. Middleton's argument that the Post Orders were not discretionary may be correct. There are three sets of orders and instructions for guards at FCI-Allenwood – "General Post Orders," "Special Instructions," and "Specific Post Orders." See Dkt. # 48 (sealed) at 23 (General Post Orders); at 61 (Special Instructions); at 75 ("Specific Post Orders"). Each is arguably more specific than the last, and one of the "Specific Post Orders" regarded the Evening Watch. This document directs unit officers, "[a]fter the unit has been released for the evening meal, to conduct checks and shakedowns of inmates entering and exiting the unit to ensure no inmate(s) from other areas are present." Id. at 76. On the very next page, there is a note stating that "[t]hese post orders are guidelines, not orders to work before or after regularly scheduled shifts." Id. at 77. In evaluating whether it had jurisdiction over this claim, the District Court only considered the General Post Orders, and did not discuss the Special Instructions or Specific Post Orders. Dist. Ct. Op. at 5. This case is distinct from Calderon v. United States, 123 F.3d 947 (7th Cir. 1997), and

Alfrey v. United States, 276 F.3d 557 (9th Cir. 2002), on which the Government rely. Calderon and Alfrey both dealt with the failure to protect an inmate from threats – there were no mandatory, non-discretionary policies at issue. And, although we do not decide the issue, it may be that the guidelines at issue here set forth a specific policy that constrained the decision-making of the unit officers. See Ashford v. United States, 511 F.3d 501, 505 (5th Cir. 2007).

Middleton also cites several cases from the Second and Seventh Circuits regarding "negligent guard" liability under the FTCA. The Second Circuit, distinguishing garden-variety human negligence from negligent acts involving an element of judgment or choice, noted that if an official was distracted, inattentive, or too lazy, that conduct would not fall within the discretionary function exception. See Coulthurst v. United States, 214 F.3d 106, 109 (2d Cir. 2000). Although Coulthurst dealt with a different type of issue (faulty gym equipment), in Triestman v. Federal Bureau of Prisons, 470 F.3d 471 (2d Cir. 2006), the Second Circuit applied this "negligent guard" theory to an inmate's assault claim. The Seventh Circuit applied this theory in Keller v. United States, 771 F.3d 1021 (7th Cir. 2014), where a mentally ill prisoner alleged that guards were "lazy or inattentive in violation of their post orders." Id. at 1022. The Seventh Circuit noted that where "prison personnel violate a mandatory regulation, the exception does not apply because 'there is no room for choice and the action will be contrary to policy.'" Id. at 1024; see also Palay v. United States, 349 F.3d 418, 431-32 (7th Cir. 2003). Finally, the Fourth Circuit, mentioning Coulthurst, recently applied the theory in an FTCA case relating to whether pat-downs were properly performed. See Rich v. United States, 811 F.3d 140

8

(4d Cir. 2015). Middleton was beaten for ten minutes in the unit, and alleged that Officer Walter was lazy, inattentive, and negligent.

For the reasons we provided, we will vacate the District Court's order insomuch as it dismissed Middleton's failure to protect claim and remand this matter for the District Court to consider whether the Special Instructions and Specific Post Orders are advisory or mandatory. While we do not decide whether a "negligent guard" theory can take some conduct outside the discretionary function exception, we also direct the District Court to consider whether such a theory would apply to this case.

### III.

In sum, we will affirm in part and vacate in part the District Court's order. We will affirm the order insomuch as the District Court dismissed Middleton's claims of negligent supervision for lack of jurisdiction. However, we will vacate the order insomuch as it dismissed Middleton's failure to protect claim. We remand this matter to the District Court for further proceedings consistent with this opinion.